# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

AUTUMN CORDELLIONE, a.k.a. Jonathan Richardson,

Plaintiff-Appellee,

v.

LLOYD ARNOLD, Commissioner, Indiana Department of Correction,

Defendant-Appellant.

On Appeal from the United States District Court for the
Southern District of Indiana, No. 3:23-cv-00135-RLY-CSW,
The Honorable Richard L. Young, Judge

## SUPPLEMENTAL REPLY BRIEF OF APPELLANT

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

KATELYN E. DOERING
JOHN M. VASTAG
Deputy Attorneys General

*Counsel for Appellant*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. ii

ARGUMENT ................................................................................................................ 1

CONCLUSION ............................................................................................................. 4

# TABLE OF AUTHORITIES

*Estelle v. Gamble,*
    429 U.S. 97 (1976) ................................................................................ 4

*Gibson v. Collier,*
    920 F.3d 212 (5th Cir. 2019) ............................................................... 2

*Hoffer v. Sec'y, Fla. Dep't of Corr.,*
    973 F.3d 1263 (11th Cir. 2020) ........................................................... 2

*Johnson v. Dominguez,*
    5 F.4th 818 (7th Cir. 2021) ............................................................. 1, 2

*Roe v. Elyea,*
    631 F.3d 843 (7th Cir. 2011) ............................................................... 2

*Wilson v. Adams,*
    901 F.3d 816 (7th Cir. 2018) ............................................................... 2

## ARGUMENT

Plaintiff does not defend the district court's reliance on WPATH guidelines to declare an Indiana statute unconstitutional. Supp. Br. 4–5. Instead, Plaintiff argues that the court's reliance on WPATH is a "red herring" because the court embraced experts opining that "gender-affirming surgery is a medical necessity." Supp. Resp. Br. 5. Again, however, Plaintiff overlooks the basis for this putative finding—that Plaintiff's experts thought that Plaintiff meets the "WPATH [Standards of Care] for surgical intervention." Dkt. 37-1 at 22–23, 26 (Ettner Rep.); *see* Reply 5–7. And regardless, the question is not whether *some* evidence supports the view that sexual-reassignment surgery is "medically necessary." It is whether *every* minimally competent professional concurs. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021).

The district court never found that *all* competent medical professionals agree that gender dysphoria should be addressed by cutting off healthy genitals. Concessions in the medical literature about the uncertain evidence for sexual-reassignment surgeries, testimony about an ongoing medical debate regarding surgery, and a national controversy over WPATH's surgical guidelines would foreclose that finding. Reply 7–14. Rather, the court sided with experts who treated WPATH's guidelines as "[t]he medically accepted standards of care" and then opined that surgery is necessary for Plaintiff based on those putative "standards of care." Dkt. 37-1 at 6, 22–23, 26 (Ettner Rep.); *see* Reply 5–7. Simply put, the court improperly assumed the role of arbitrating an ongoing medical debate over hotly contested interventions.

Plaintiff still does not explain why it is improper for States to make an across-the-board judgment about medical matters. *See Gibson v. Collier*, 920 F.3d 212, 216 (5th Cir. 2019); Opening Br. 31–35. Rather, Plaintiff cites dicta from *Roe v. Elyea*, 631 F.3d 843 (7th Cir. 2011), a case where a prison implemented policies not for "any real medical reason" but to "keep it simple." *Id.* at 860. But that case cannot support the notion that the Eight Amendment bars policymakers from exercising their traditional authority to make judgments about interventions that are "the subject of genuine, good-faith disagreement." *Hoffer v. Sec'y, Fla. Dep't of Corr.*, 973 F.3d 1263, 1272–73 (11th Cir. 2020). This Court should not be the first to hold that the Eighth Amendment allows individual doctors to override state legislatures' time-honored authority to adopt policies regarding contested medical matters. Opening Br. 24–41.

In rejecting Dr. Beers's recent evaluation explaining that Plaintiff is not a candidate for sexual-reassignment surgery, the district court again overstepped its role. Supp. Br. 6. The court's task was not to determine which medical professional is most competent or who recommended the best course of action. It was to determine whether "no minimally competent professional" would so act. *Johnson*, 5 F.4th at 825. The district court never asked whether Dr. Beers (or others holding her views) was a "minimally competent professional." It simply rejected her evaluation. It is no answer to say that the Department did not designate Dr. Beers as an expert. Reply 23–24. Whether or not she is a designated expert, that she articulated a reasonable medical basis for a decision goes to whether the Department acted with *subjective* bad intent. *See Wilson v. Adams*, 901 F.3d 816, 820–22 (7th Cir. 2018).

Plaintiff argues Dr. Beers is not "qualified" to conduct surgical evaluations. Supp. Resp. Br. 7. But the question is whether she is "minimally competent," not whether she is "qualified" to apply WPATH's surgical guidelines. And Dr. Beers certainly is a minimally competent professional. Opening Br. 53; Reply 18; Supp. Br. 8. Dr. Beers is a trained psychologist who has worked with nearly 100 patients with gender dysphoria, has diagnosed ten patients with it, and specializes in evaluations. Dkt. 152-1 at 8:14–9:7, 41:1–10, 45:4–12. Relatedly, Dr. Beers's opinion cannot be dismissed on the ground that her views do not represent a significant enough change to require "reconsideration of the preliminary injunction." Supp. Resp. Br. 4. As Plaintiff does not dispute, it was Plaintiff's burden to prove that injunctive relief was warranted. Supp. Br. 6–7. Thus, the court was required to withhold injunctive relief in the face of mounting evidence that competent professionals disagree.[1]

Nor was it proper to summarily reject Dr. Beers's opinion because she reached similar conclusions to Dr. Farjellah. Supp. App. 9; *contra* Supp. Resp. Br. 7–8. In concluding that Plaintiff is not a candidate for sexual-reassignment surgery, Dr. Beers conducted her own independent evaluation based on an in-person assessment conducted to gauge Plaintiff's suitability for surgery and Plaintiff's records. Dkt. 128-1 at 1; Dkt. 152-1 at 30:10–12; *contra* SA30–31 (dismissing Dr. Farjellah for conducting a "short telehealth appointment" that was "not for the purpose of evaluating [Plaintiff] as a candidate for gender-affirming surgery"). And while Dr. Beers

---

[1] The Department stipulated to the historical fact of a gender-dysphoria diagnosis, not its truth. Dkt. 66 ¶ 35.

observed that Plaintiff was "clinically stable" at the time of their December 2024 meeting, Supp. App. 9, that hardly means Plaintiff does not have a personality disorder responsible for any symptoms. If anything, stability indicates professionals could reasonably believe the Department's current actions adequately address Plaintiff's symptoms. Opening Br. 40.

Finally, Plaintiff misunderstands the significance of the district court's holding that Indiana has a rational basis for denying Plaintiff and other prisoners sexual-reassignment surgery. The State is not arguing that *any* rationale that withstands rational-basis review defeats an Eighth Amendment claim. *Contra* Supp. Resp. Br. 6 n.1. Rather, the specific rationale adopted by the district court forecloses Plaintiff's argument that the only possible rationale for denying prisoners sexual-reassignment surgery is the "wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). If a prisoner "cannot follow the [WPATH] recommendation that he or she live for twelve months as their preferred gender before [sexual-reassignment] surgery," Supp. App. 7, then policymakers have a legitimate, non-punitive reason for deciding that prisoners should not receive that surgery.

## CONCLUSION

The preliminary injunctions should be vacated.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

JENNA M. LORENCE
Deputy Solicitor General

KATELYN E. DOERING
JOHN M. VASTAG
Deputy Attorneys General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-0709
James.Barta@atg.in.gov

## CERTIFICATE OF COMPLIANCE

1. This document complies with the type-volume limits of this Court's March 20, 2025 order, because it contains 997 words.

2. This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

April 7, 2025

<u>/s/ James A. Barta</u>
JAMES A. BARTA
Solicitor General

**CERTIFICATE OF SERVICE**

I hereby certify that on April 7, 2025, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

April 7, 2025

/s/ James A. Barta
JAMES A. BARTA
Solicitor General

Office of the Indiana Attorney General
Indiana Government Center South
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-0709
Facsimile: (317) 232-7979
James.Barta@atg.in.gov